UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES A. LISO, | : | Case No. 1:14cv834 |
| Petitioner, | : | District Judge Michael R. Barrett<br>Magistrate Judge Michael R. Merz |
| v. | : | |
| WARDEN, RICHLAND CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

**OPINION AND ORDER**

This matter is before the Court on the October 8, 2015 Report and Recommendation of the Magistrate Judge, which recommends dismissing the Petition with prejudice. (Doc. 21). After being granted an extension of time, Petitioner timely filed his Objections to the Report on October 30, 2015. (Doc. 23).

**I.   PROCEDURAL BACKGROUND**

As explained by the Magistrate Judge (Doc. 21, PageID 1006-1009), Petitioner was indicted on two counts of rape of two sibling children who lived near him. Prior to trial, Petitioner filed a motion to suppress, in part, his confession. His motion was denied. A jury found Petitioner guilty of count one, not guilty of count two, and Petitioner was sentenced to ten years. Pursuant to a sentence clarification request, he was subsequently resentenced to ten years to life. The conviction was affirmed in part, reversed in part and remanded for resentencing on appeal, finding that the trial court lacked jurisdiction to resentence Petitioner after his appeal had been filed. Petitioner, *pro se*, filed an appeal to the Ohio Supreme Court, which declined to accept jurisdiction.

1

On November 7, 2013, Petitioner was resentenced to an indefinite sentence of a minimum of ten years to life. His conviction was affirmed, and his subsequent motion for delayed appeal to the Ohio Supreme Court was denied. On January 31, 2014, Petitioner, *pro se*, moved to reopen his appeal under Ohio R. App. P. 26(B), but the application was denied as untimely. Petitioner took no appeal to the Ohio Supreme Court.

On October 24, 2014, Petitioner filed his Habeas Corpus Petition in this Court, setting forth the following grounds for relief:

> **Ground One**: Violation of federal and state constitutional rights to due process when it denied the motion to suppress.
>
> **Ground Two**: Violation of federal and state constitutional rights to due process and a fair trial when receiving ineffective assistance of counsel.

Upon consideration of all of the claims, the Magistrate Judge recommended dismissing the Petition with prejudice.

## II. STANDARDS OF REVIEW

### A. Objections

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the Magistrate [Judge]'s report has the same effect as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Nevertheless, the objections of a petitioner appearing *pro se* will be construed liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B. 28 U.S.C. § 2254

Under 28 U.S.C. § 2254(a), a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treatises of the United States." Generally that means that an application for writ of habeas shall not be granted with respect to any claim adjudicated on the merits in the State court unless the petitioner properly has exhausted his administrative remedies and the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(b), (d).

### III. ANALYSIS

In Petitioner's objections, he makes several arguments that the Court must construe liberally given his *pro se* status. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519 (1972) (holding that pro se pleadings are to be "held to 'less stringent standards than formal pleadings drafted by lawyers'"). For the reasons explained below, however, Petitioner's objections are overruled.

#### A. First Objection – Conviction Based on Involuntary Confession

First, Petitioner argues that the Magistrate Judge incorrectly concluded that Petitioner's confession was voluntary and thus, his motion to suppress should have been granted. As the Magistrate Judge correctly explained, the federal court must defer to state court decisions on the

3

merits unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. §2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011).

Petitioner first "objects to the Magistrate Judge's erroneous misrepresentation of the Twelfth District's ruling" that the trial court disregarded the probable truth of the confession itself. (Doc. 23, PageID 1026.) Petitioner argues that the Twelfth District's decision is an objectively unreasonably application of *Rogers v. Richmond*, 365 U.S. 534 (1965). In *Rogers*, the Supreme Court held that, in determining whether a confession is voluntary, the trial judge should disregard the probable truth of the confession itself. The Magistrate Judge found that the Twelfth District did not consider the probable truth of the confession, but rather, the court found Petitioner's statement that he lied when he made the confession to be unpersuasive. The Court agrees with the Magistrate Judge that the Twelfth District did not consider the truth of the confession itself. Instead, the court considered the truth or falsity of the testimony given at the suppression hearing – a practice courts necessarily must engage in when evaluating testimony at a hearing. Thus, Petitioner's argument that the Twelfth District's decision is an objectively unreasonable application of *Rogers* is without merit.

Petitioner next objects to the Magistrate Judge's statement that "Liso points to no Supreme Court precedent holding that police deception alone renders a confession involuntary." (Doc. 21, PageID 1015). He argues that police activity was objectively coercive because "police promised petitioner of a lesser charge rather than a 1st degree felony if he admitted to the offense." (Doc. 23, PageID 1027). Petitioner cites *Lynumn v. State of Illinois*, 372 U.S. 528 (1963) to support his position that a finding of deception alone renders a confession involuntary.

In *Lynumn*, the Supreme Court explained:

> It is thus abundantly clear that the petitioner's oral confession was made only after the police had told her that state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate.' These threats were made while she was encircled in her apartment by three police officers and a twice convicted felon who had purportedly 'set her up.' There was no friend or adviser to whom she might turn. She had had no previous experience with the criminal law, and had no reason not to believe that the police had ample power to carry out their threats.

*Id*. at 534. Further, the Court noted that the State in *Lynumn* conceded that "the totality of the circumstances disclosed by the record must be deemed to have been combined to produce an impellingly coercive effect upon the petitioner" at the time she confessed. *Id*. Therefore, Petitioner mistakenly argues that it was solely the police officers' deception that rendered the confession involuntary. Instead, the Supreme Court considered the totality of the circumstances when making its determination, including the fact that the police threatened to take her children from her, she was encircled by three police officers when her confession was made and she had no previous experience with the criminal law. Moreover, decades after *Lynumn* was decided, the Supreme Court examined the issue again and explained that "we continue to employ the totality-of-circumstances approach when addressing a claim that the introduction of an involuntary confession has violated due process." *Withrow v. Williams*, 507 U.S. 680, 689 (1993) (internal citations omitted). Consequently, Petitioner's argument that police deception alone renders a confession involuntary is unpersuasive.

In this case, the Twelfth District found that Detective Wagner's statement was implicitly deceptive. The court directly quoted his statement: "I'm not gonna tell you that there may not be felony charges, I'm gonna tell you that you're not going to be look at a felony one, that's for damn sure." *State v. Liso*, 2013-Ohio-4759, 2013 Ohio App. LEXIS 4966 (12th Dist. Oct. 28,

5

2013), ¶ 14. Despite finding his statement deceptive, the court held that deception alone was not determinative. The Court agrees with the Magistrate Judge that the Twelfth District correctly considered police deception, along with other relevant facts when determining whether Petitioner's confession was coerced, such as: Petitioner came to the station voluntarily, there was no evidence of physical abuse or deprivation, Petitioner was not under arrest and Petitioner was given a restroom break and the chance to call an attorney if he wanted. (Doc. 21, PageID 1015). Accordingly, the Court agrees with the Magistrate Judge that the state courts' decisions were not based on an unreasonable determination of the facts in light of the evidence presented in violation of 28 U.S.C. § 2254(d)(2).

Having reviewed Gound One, *de novo*, the Court concludes that the Magistrate Judge correctly determined that Petitioner's First Ground for Relief should be dismissed with prejudice.

### B. Second Objection – Ineffective Assistance of Trial Counsel

Petitioner objects to the Magistrate Judge's conclusion that Ground Two is procedurally defaulted because it was not presented to the Twelfth District on appeal. The Magistrate Judge explained that the procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). 28 U.S.C. § 2254(b)(1) requires a petitioner with a federal constitutional claim to present those claims to state courts so that state courts have a "fair opportunity" to consider those claims before raising them in a federal habeas corpus

6

action. *Anderson v. Harless,* 459 U.S. 4, 6 (1982). It is not sufficient that "a somewhat similar state-law claim was made." *Id*.

The Magistrate Judge found that the only claim Petitioner argued in his Reply was that his trial attorney incorrectly advised him that the maximum penalty for each of the offenses with which he was charged was ten years imprisonment. (Doc. 18, PageID 922). The Magistrate Judge further deemed Petitioner's additional sub-claims for ineffective assistance of trial counsel abandoned in the absence of any argument. And because Petitioner failed to raise his claim for ineffective assistance of counsel with respect to the maximum penalty for each offense on appeal, the Magistrate Judge found that he had procedurally defaulted on this claim.

Petitioner does not dispute that his claim for ineffective assistance of trial counsel as to the maximum penalty for each offense is procedurally defaulted. Nor does he raise any objections to the Magistrate's Report and Recommendation. Accordingly, the Court adopts the Magistrate Judge's Report and Recommendation with respect to this claim for ineffective assistance of trial.

Instead, Petitioner argues that his ineffective assistance of counsel claim "that counsel was ineffective for failing to subpoena the most crucial witness, 'was properly raised in all of the state courts.'" Thus, Petitioner argues this claim is not procedurally defaulted. On direct appeal, Petitioner raised as Assignment of Error No. 2 that he received ineffective assistance of counsel because his trial attorney did not call the children's babysitter as a witness. (Doc. 11, PageID 70). It is unclear, however, whether the babysitter was "the most crucial witness" referenced in his Petition. And the Magistrate Judge is correct that Petitioner did not specifically argue any ineffective assistance of counsel claims in his Petition aside from his claim that his trial attorney incorrectly advised him of the maximum penalties for each offense. Consequently, the

Magistrate Judge did not address this issue. Nonetheless, Petitioner cites *Haines v. Kerner*, *supra*, reiterating that because he filed his Petition *pro se*, he should be held to a less stringent standard. Accordingly, the Court analyzes Petitioner's Objections with respect to this claim.

Respondent does not dispute that Petitioner argued on direct appeal that his trial counsel was constitutionally ineffective because he failed to call the children's babysitter to testify. (Doc. 12, PageID 838). Therefore, the Court addresses this claim on the merits; Petitioner's claim fails nevertheless.

To succeed on a claim for ineffective assistance of counsel, a petitioner must show both that counsel's performance was deficient and the deficient performance prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). When determining whether a petitioner's Sixth Amendment right to effective assistance of counsel was violated, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955). On direct appeal in this case, the Twelfth District explained:

> Liso next argues that his trial counsel was ineffective because he failed to call the children's babysitter as a witness. Liso argues within his brief that he and the babysitter had an 'adversarial relationship' and that she possibly 'coached the children to lie.' Liso asserts that his trial counsel was ineffective for not calling the babysitter to explore the adversarial relationship further after counsel had 'promised the jury that they would hear testimony of the babysitter.' However, the record does not support this assertion.
>
> During opening statements, Liso's trial counsel stated,
>
>> Well, at some point, evidence will show, Mr.—there is a babysitter that babysits these children. And the babysitter, you will see, through testimony, has a—a very difficult relationship with Mr. Liso, and we'll develop that further. Doesn't like Mr. Liso, for

8

> unrelated things. And once the babysitter was alone with these kids she was one of the first people to raise her hand and say—We believe the testimony would show, as I said, a very adversarial relationship between Mr. Liso and the babysitter. We will also * * * believe the testimony will show that the babysitter was one of the first—or not the first person who the kids reported this to. And we believe, through testimony of the children, you will see that.

Despite Liso's argument, defense counsel never promised the jury that it would hear testimony from the babysitter directly, only that 'through testimony' and 'through testimony of the children,' the jury would hear evidence regarding the babysitter. The record is undisputed that Liso's trial counsel did not subpoena the babysitter or list her as a defense witness. However, defense counsel cross-examined some of the state's witnesses, including the children, regarding the babysitter to develop further the evidence alluded to during opening statements. Therefore, defense counsel did not leave unfulfilled a promise to the jury by not calling the babysitter as a witness.

Moreover, we find that trial counsel's decision to not call the babysitter can be considered sound trial strategy. Had the babysitter testified, the jury would have heard the details of how the children shared their rape allegations, and how the babysitter found the allegations credible enough to report them. The jury could have, therefore, found the babysitter's testimony credible evidence of Liso's guilt. Also, had the babysitter testified as to why she and Liso shared an adversarial relationship, such testimony may have shed a negative light upon Liso for whatever conduct led to the adversarial relationship.

The record also demonstrates that part of defense counsel's trial strategy was to cast doubt upon the state's choice to not call the babysitter as a witness. During closing arguments, defense counsel stated, 'there is one piece of evidence they could have brought ya, [sic] ladies and gentlemen, but they didn't. And you can draw whatever conclusions from this you're allowed, because it's not about the Defendant not testifying. Where was [the babysitter]?' Although the state objected to defense counsel's statement, the trial court overruled the objection, and found that defense counsel was making a proper comment upon the babysitter not testifying. Defense counsel then continued,

> As I was saying, where is [the babysitter]? She is the lynchpin. She is the connection, but she brings this whole case together. Don't just skip over that part of the testimony. The kids told you, two beautiful, wonderful kids told you, they independent of each other, and that's the important part, because I asked that, independent of each other, within three days, confessed to this—this babysitter. Does that pass the smell test? * * * She's the one, the catalyst, that began all of this. Where is she? Why did you not hear from her? Draw your conclusions. It's obvious.

9

> The record clearly indicates that part of the defense strategy was to cast doubt upon the babysitter's credibility by highlighting the fact that the state did not call her as a witness. Had defense counsel called the babysitter, this strategy would have been invalidated and it is possible that the jury would have heard testimony regarding the children's allegations and found such testimony from the babysitter to be credible. During opening statements, Liso's trial counsel planted seeds of doubt in the minds of the jury as to the babysitter's motive and credibility, and then developed evidence by cross-examining the state's witnesses about the babysitter. Counsel then summarized the testimony during closing arguments, honing in on any doubt that may have been raised during the trial. Defense counsel's strategy was successful in procuring a not guilty verdict on the charge that Liso raped B.M.
>
> After reviewing the record, we find that Liso received effective assistance of counsel. As such, Liso's second assignment of error is overruled.

*State v. Liso*, 2013-Ohio-4759, 2013 Ohio App. LEXIS 4966 (12th Dist. Oct. 28, 2013), ¶ 25-31.

In his Petition, Petitioner failed to set forth any arguments specifically related to his trial attorney's failure to call the babysitter as a witness. In his Objections, however, Petitioner argues that the Twelfth District's "rationale was erroneous because no evidence was presented that the babysitter had encouraged the children to make false reports against the petitioner" and thus, "the exploration of an adversarial relationship between the petitioner and the babysitter, who was the reporter of the alleged abuse was an absolutely critical factor for the jury to consider." (Doc. 23, PageID 1031).

On habeas review, courts are to "guard against the danger of equating unreasonableness under [28 U.S.C.] § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770 (2011). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*. In other words, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter,* 131 S.Ct. at 785. Pursuant to

10

standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

Here, the Twelfth District found that counsel's failure to call the babysitter as a witness could be considered sound trial strategy. The Twelfth District explained that part of defense counsel's trial strategy was to cast doubt on the State's choice not to call the babysitter as a witness. The court further noted that defense counsel's strategy was effective because Petitioner was found not guilty of count two.

Petitioner's argument that the exploration of an adversarial relationship between Petitioner and the babysitter was critical for the jury to decide is unavailing. The Twelfth District explained that the choice not to call the babysitter as a witness could be considered sound trial strategy because had defense counsel called the babysitter, the jury might have found her testimony to be credible evidence of Petitioner's guilt. Accordingly, under a highly deferential standard of review, the Court concludes that the Twelfth District's application of *Strickland* was not unreasonable. Therefore, even assuming, arguendo, Petitioner did not abandon his claim for ineffective assistance of counsel with respect to his trial attorney's failure to call the babysitter as a witness, his claim should be dismissed.

Having reviewed Gound Two, *de novo*, the Court concludes that the Magistrate Judge correctly determined that Petitioner's Second Ground for Relief should be dismissed with prejudice.

### IV. CONCLUSION

Consistent with the foregoing, Petitioner's objections (Doc. 23) are **OVERRULED** and the Report and Recommendation (Doc. 21) is **ADOPTED** in its entirety. The Petition is hereby **DISMISSED** with prejudice. Because reasonable jurists would not disagree with this

conclusion, Petitioner is denied a certificate of appealability.  Moreover, the Court certifies to the Sixth Circuit that any appeal would be objectively frivolous and Petitioner therefore should not be permitted to proceed *in forma pauperis*.

    **IT IS SO ORDERED**.

                                                    s/*Michael R. Barrett*
                                                    Michael R. Barrett, Judge
                                                    United States District Court